[Cite as *State v. Rentas*, 2022-Ohio-2412.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellant,      :

                      No. 111044

    v.                         :

JULIO RENTAS,                     :

    Defendant-Appellee.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 14, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-81-162946-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon A. Piteo, Assistant Prosecuting Attorney, *for appellant.*

Walter H. Edwards, *for appellee.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} The state of Ohio ("the state") appeals the trial court's decision dismissing the indictment against defendant-appellee, Julio Rentas ("Rentas"). For the reasons that follow, we affirm.

## I.  Procedural History and Background

{¶ 2}  In March 1981, Rentas was indicted with rape and gross sexual imposition, and a warrant was subsequently issued.  The state alleged that Rentas, then age 27, forcefully engaged in sexual conduct with the victim, then age 14, in the victim's bedroom on January 4, 1981.[1]  It is undisputed that he was a close personal friend of the victim's family, but alleged to have been in a relationship with the victim.

{¶ 3}  In early September 2020, Rentas was arrested in Puerto Rico on the outstanding warrant.  Authorities returned him to the United States following his arrest and he immediately retained counsel.  Due to the COVID-19 pandemic, arraignment did not occur until October 28, 2020.  On March 15, 2021, following initial discovery, Rentas moved to dismiss the indictment, raising three arguments:  (1) the state violated his constitutional right to a speedy trial; (2) the state violated his due process rights in delaying prosecution following indictment; and (3) the statute of limitations expired, preventing prosecution.  He requested an oral hearing on his motion.

{¶ 4}  On April 2, 2021, the state filed its opposition, contending that it did not violate Rentas's speedy trial or due process rights because Rentas caused the delay in prosecution and that he could not demonstrate that he suffered any prejudice.    The state further maintained that prosecution against Rentas

---

[1] In 1981, the age of consent was 13.  *See* former R.C. 2907.02(A)(3).

commenced within the relevant statute of limitations period. On June 10, 2021, the trial court summarily denied Rentas's motion.

{¶ 5} According to the trial court's docket, plea negotiations and ongoing discovery subsequently occurred. On August 25, 2021, Rentas filed a "motion for evidentiary hearing and to reconsider denial of [his] motion to dismiss." In his motion, he again asserted that the indictment should be dismissed for want of prosecution because the state violated his constitutional guarantees to due process and a speedy trial. The state again opposed the motion, incorporating its prior motion in opposition. The court conducted an evidentiary hearing on October 21, 2021.

## II. Evidentiary Hearing

{¶ 6} Peter Demopoulos, an investigator with the Cuyahoga County Prosecutor's Office CODIS unit, testified on behalf of the state. He stated that he became involved in the matter in 2020 at the direction of CODIS's then director, Richard Bell. Demopoulos started his investigation by reviewing an incomplete police file — he learned that the original 1981 police file had been destroyed. (Tr. 14 and 33.) According to Demopoulos, the file would have included the original investigating detective's notes and impressions and witness statements. He also testified that he contacted the original investigating detective, Kenneth Lyons, whom Demopoulos said could not recall the case. (Tr. 34.)

{¶ 7} Demopoulos learned that shortly after the alleged rape, the victim was treated at Deaconess Hospital, which has since closed. He learned that the

victim's medical records were not retained after they were transferred to "Iron Mountain," a store house. Demopoulos testified that because these records were not retained, it was unclear whether any clothing was preserved.

{¶ 8} Demopoulos provided a timeline of what steps the police took over the past 40 years since Rentas's indictment. He stated that within a few days after the rape was reported, the police looked for Rentas. Demopoulos admitted that the warrant contained three addresses, but said from his review of the file, none of the addresses appeared to have been investigated. (Tr. 45-46.) However, he testified earlier that he believed Rentas lived with his brother, Joselito Rentas ("Joselito"), who was mistakenly arrested in connection with this matter. (Tr. 14-15.) After the victim's family confirmed that Joselito was not Julio Rentas, he was released from police custody. At the time, the victim's family indicated that Rentas may have traveled to New York where his sister lived — his sister's address was listed on the documentation presented at the hearing.

{¶ 9} Demopoulos testified that the police then sought an indictment in March 1981 and a warrant was issued. He stated that the police did not have a proper social security number, full name, or date of birth for Rentas but stated they had a description. In fact, it was later discovered that the information on the warrant pertained to Joselito, and even after he was arrested, no one changed the information or obtained the correct information from him while he was in custody. (Tr. 23, 48.) Demopoulos testified that "nothing in the police file indicates what the police were doing to find Rentas" from 1981 to 1996. (Tr. 18.)

{¶ 10} In 1996, then Prosecutor Stephanie Tubbs Jones contacted the FBI to help locate Rentas. The FBI made an arrest in New York. However, authorities again arrested Joselito due to the inaccurate information that remained in the warrant.

{¶ 11} According to Demopoulos, Joselito was in police custody for months and hired an attorney and private investigator to clear up this issue. He testified that documents and statements from Joselito's attorney in 1996 were included in his file, which he reviewed. Those documents included a handwritten unsworn statement from the victim's mother, who is now deceased, and a handwritten unsworn translated statement from the victim's sister. In both of these statements, the witnesses claim that Rentas raped the victim on January 1, 1981, at knifepoint. Demopoulos testified that the victim's original statement did not mention any knife in connection with the rape.

{¶ 12} Demopoulos further testified about another narrative that was created by Joselito's legal team. In that narrative, the unknown author indicated that they traveled to Cleveland and spoke with Nelson Soto, the victim's brother-in-law. According to the narrative, Soto reported that Rentas — not Joselito — allegedly raped the victim but "this rape to him was questionable because [Rentas] was the [victim's] boyfriend and the alleged rape took place in a room that was less than fifteen feet from the [victim's] parent['s] room." *See* Exhibit D. Demopoulos testified that since Rentas's arrest, he had not been directed to locate Soto, although he believed that Soto may be deceased.

{¶ 13} After reviewing all the documentation provided to him, Demopoulos spoke with the victim and her brothers. Based on those interviews, he began questioning whether the U.S. Marshal was actually looking for Rentas, rather than Joselito, because the warrant information was never updated, despite arresting the wrong person on two occasions. He was advised by the victim that she last heard from Rentas's family that Rentas was living in Puerto Rico. Demopoulos conducted a simple search on social media via Facebook and located Rentas in Puerto Rico. (Tr. 23.)

{¶ 14} Demopoulos admitted that he was not able to find any factual basis to support the state's contention that Rentas was "hop-scotching" around New York in an evasive manner or that Rentas stole Joselito's social security number to hide from police. (Tr. 49, 51.) Demopoulos stated that despite the police in 1981 having Rentas's employer information, including address, there is no indication that the police attempted to locate Rentas at this address when the rape was initially reported. He further admitted that despite having a purported New York address in 1981, there is no indication that the police attempted to locate Rentas at this address when the rape was initially reported.

{¶ 15} Rentas's son, also named Julio Rentas, testified on behalf of his father. He said that his father worked for a local New York CBS affiliate for 15 years. In support, he identified his father's pension documentation, showing that Rentas received earned-service credits from 1984 until 1999. He further identified documents to support Rentas's contention that he was living openly as himself and

not evading police detection or apprehension. Those documents included: a translated legal document dated October 2008 purportedly originating from a court in Puerto Rico; a utility bill in Rentas's name dated February 2, 2021; a certificate from a police agency in Puerto Rico dated February 13, 2021; and Rentas's Puerto Rico government-issued identification dated August 20, 2020. His son further testified that his mother knew at all times where Rentas was living. According to the son, his mother would have told the police where Rentas was living if interviewed, and he believed that she had been interviewed.

{¶ 16} At the close of testimony, the trial court admitted all exhibits into evidence and issued its decision in open court granting Rentas's motion. The trial court found that the amount of missing or destroyed evidence — hospital records, clothing, Cleveland Police Department archives, witness statements, unavailability of the alleged victim's mother due to her being deceased — prejudiced Rentas. (Tr. 67.) The court further found that the remaining evidence — inconsistent statements and the investigation conducted by counsel and the investigator hired by Joselito — did not remedy the prejudice that existed in this case. (Tr. at *id*.) The trial court subsequently issued a judgment entry summarily granting the motion and dismissing the case without prejudice.

{¶ 17} The state now appeals. [2]

---

[2] Pursuant to R.C. 2945.67(A), the state may appeal the dismissal of an indictment whether the dismissal is with or without prejudice. *State v. Craig*, 116 Ohio St.3d 135, 2007-Ohio-5752, 876 N.E.2d 95, syllabus.

### III. Assignment of Error

{¶ 18} The state raises as its sole assignment of error that the trial court erred in dismissing the indictment without considering all relevant factors pursuant to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶ 19} The crux of the state's argument is that the trial court did not fully engage in a complete analysis of the *Barker* factors when rendering its decision because it only addressed the prejudice factor in rendering its decision. It contends that this court should reverse the trial court's decision for this reason alone and remand the matter for a new hearing with an order for the court to consider all the *Barker* factors.

{¶ 20} In support, the state cites *State v. Perkins*, 2d Dist. Clark No. 08-CA-0081, 2009-Ohio-3033. In *Perkins*, the court reversed the trial court's decision dismissing the indictment "for reasons not argued by the state." *Id.* at ¶ 7. In its sua sponte review, the court noted that the trial court "apparently" only considered two of the *Barker* factors — delay and reason for the delay — both of which were either apparent from the record or conceded by the state. The *Perkins* Court found that the defendant delayed asserting his right to a speedy trial until 22 months after his arrest. Additionally, the court found that the record contained no evidence that the defendant offered any allegation of prejudice, which is necessary in a constitutional speedy trial challenge. According to the court, this lack of information warranted a remand to the trial court for a "reevaluation" of the defendant's motion. *Id.* at ¶ 16.

{¶ 21} We find *Perkins* distinguishable, however, because the record here is more than sufficient for this court to review the merits of this appeal. In this case, and unlike in *Perkins*, the trial court conducted a full evidentiary hearing with witness testimony, admission of exhibits, and counsel's arguments. The record is replete with evidence offered by Rentas supporting his argument that he was prejudiced by the state's delay in prosecuting this matter. Additionally, the state presented testimony and evidence refuting Rentas's allegations while supporting its assertion that Rentas caused the delay.

{¶ 22} Even if this court agreed with the state and relied on *Perkins*, the appropriate remedy would be to remand the matter to the trial court for it to fully explain its consideration of all the *Barker* factors, not conduct a new hearing. Moreover, the state has not provided any authority that would prevent this court from independently reviewing the *Barker* factors based on the record provided.

{¶ 23} We find the Ohio Supreme Court's decision *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, instructive. In *Long*, the court considered when the speedy trial clock starts after convictions are reversed on appeal. The court clarified that the clock starts when the reviewing court orders the case remanded to the trial court. *Id.* at ¶ 16. Based on its holding, the court determined that the appellate court's incorrect determination of when the clock started led the appellate court to improperly weigh the first *Barker* factor against the defendant. *Id.* at ¶ 17-19.

{¶ 24} Rather than remand the matter to the appellate court or the trial court to conduct a new review of the *Barker* factors in light of the clarification, the Supreme Court independently considered and weighed the factors based on the established record. In fact, the court specifically recognized that the proposition of law only pertained to the proper speedy trial calculation, but "because our review is de novo, we independently review the application of all the *Barker* factors to the facts here." *Id.* at ¶ 18, fn. 1; c*ompare id.* at ¶ 29 (Kennedy, J., concurring in judgment, finding that she "would remand the cause to the court of appeals to evaluate [the] speedy-trial claim in light of this court's decision clarifying the law"); *see also id.* at ¶ 31 (Fischer, J., concurring in part and dissenting in part, finding that he would remand the case to the court of appeals to "weigh the *Barker* factors, in the first instance").

{¶ 25} As the *Long* Court reaffirmed, a review of a trial court's decision on a motion to dismiss for constitutional speedy trial claim raises a mixed question of law and fact. *Long* at ¶ 15; *see also State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 22. A reviewing court applies a de novo review to the legal issues and independently determines whether the trial court correctly applied the law to the facts of the case. *Burks* at *id.* Accordingly, a reviewing court must afford great deference to the trial court's findings of fact, if any, if they are supported by competent, credible evidence, but review the application of the law to those facts de novo. *Long* at ¶ 15; *Burks* at *id.*

{¶ 26} Reviewing the motions filed in the trial court, the state's briefs in opposition, the transcript and evidence presented at the full evidentiary hearing, and the trial court's in-court pronouncement, we find that the record is sufficiently established to afford the state meaningful appellate review.

## A. Speedy Trial Violation

{¶ 27} The Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a defendant the constitutional right to speedy trial. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32.

{¶ 28} To determine whether there has been a denial of a defendant's constitutional right to a speedy trial, the court balances the four factors identified in *Barker*, 407 U.S. at 530-533, 92 S.Ct. 2182, 33 L.Ed.2d 101; *Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, at ¶ 14. Those factors are: "'(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant.'" *Long*, quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 22, citing *Barker* at 530. However, no single factor controls the analysis. *Long* at ¶ 14. Standing alone, none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker* at 533.

{¶ 29} A defendant must meet the "threshold requirement" of a "presumptively prejudicial" delay to trigger a *Barker* analysis. *State v. Duncan*, 8th Dist. Cuyahoga No. 97208, 2012-Ohio-3683, ¶ 8. "'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Long* at *id.*, quoting *Barker* at 530. Courts have generally held that a delay approaching one year becomes "presumptively prejudicial." *Long* at *id.*, citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

### 1. Length of the Delay

{¶ 30} Rentas was indicted in March 1981 and arrested in September 2020. On appeal, the state maintains that while there is delay in this case, it is not "presumptively prejudicial" and the trial court made no finding regarding this threshold requirement. Despite their position on appeal, the state conceded in the trial court that the delay of approximately 40 years satisfies the threshold requirement of a presumptively prejudicial delay. *See* State's Brief in Opposition filed Sept. 2, 2021, p. 4 ("While the Defendant has made a threshold showing that there was delay in the commencement of prosecution of this case * * *"); State's Brief in Opposition filed Apr. 2, 2021, p. 4 ("The length of delay in this case was 39 years. This triggers the rest of the *Barker* factors.") Accordingly, because the state conceded this factor, the trial court was not required to make any specific finding. Based our de novo application of the law, this factor weighs in Rentas's favor, and thus, triggers the remaining factors in the *Barker* analysis.

## 2. Reason for the Delay

{¶ 31} The second factor under *Barker* is the reason the state assigns to justify the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. Different reasons for delay are afforded "different weights." *Id.* A deliberate delay by the government weighs heavily against the state. *Id.* Delay resulting from a neutral reason such as negligent conduct of the government weighs less heavily. *Id.* Delay that is justifiable and reasonable in time generally does not weigh against the state at all. *Id.*

{¶ 32} While it is true that a defendant is under no obligation to take affirmative steps to ensure that he will be brought to trial in a timely fashion, "a court need not ignore a defendant's fugitivity in considering where there has been a violation of his Sixth Amendment right to a speedy trial." *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir.1988). Accordingly, intertwined within this *Barker* analysis is whether the defendant shares any responsibility for the delay. *State v. Triplett*, 78 Ohio St.3d 566, 570, 679 N.E.2d 290 (1997).

{¶ 33} The state concedes that gaps exist where it could not show the efforts of Cleveland police to locate and apprehend Rentas. (Tr. 9.) Nevertheless, the state maintains that Rentas "is the only person responsible for the thirty-nine-year delay in the initiation of prosecution" following indictment because he fled from Ohio immediately after the offense and evaded police by living in New York and Puerto Rico. According to the state, Rentas did not live his life "open" enough to allow the police to find him.

{¶ 34} Admittedly, the evidence demonstrates that Rentas lived in New York from at least 1984 until 1999, and that he was apprehended in Puerto Rico in September 2020. However, the record does not support the state's assertion that Rentas is solely responsible for the delay in prosecution.

{¶ 35} Demopoulos testified that there was nothing in the police file to indicate what efforts the police were taking to locate and apprehend Rentas from 1981 until 1996. And he admitted that he was not able to find any factual basis to support the state's assertion that Rentas was "hop-scotching" around New York in an evasive manner or that Rentas stole Joselito's social security number to hide from police. (Tr. 49-51.)

{¶ 36} Additionally, the conduct that triggered the delay appears to be the incorrect information connected to the warrant. Demopoulos testified that when the warrant was issued, the police did not have Rentas's correct social security number, date of birth, or full name. This information or lack thereof caused the police to arrest Joselito immediately following the allegations. After Joselito's arrest, it was discovered that the information contained on the warrant was incorrect. Nevertheless, the state did not update or correct the warrant information. Rather, Joselito's information remained and Joselito was again arrested in 1996 in New York. In fact, Demopoulos suggested that even after Joselito's arrest in 1996, the warrant information was not updated until he began investigating the case in 2020.

{¶ 37} There is nothing in the record to suggest, however, that the state's delay in its apprehension was deliberate in order to gain any tactical advantage in its prosecution of Rentas. And Rentas has not asserted that the state's delay was deliberate. Accordingly, we conclude that the state's reason for the length of the delay is a "neutral reason" that weighs against the state, but not as heavily. An almost 40-year delay is at a minimum negligent, especially considering that Demopoulos testified that he was able to ascertain Rentas's whereabouts by conducting a simple search on social media via Facebook. However, the state gained no tactical advantage by its own dilatory conduct.

{¶ 38} Based on the record before this court, we find that the state caused the delay in this case, and thus, the second *Barker* factor weighs against the state.

### 3. Assertion of Speedy Trial Right

{¶ 39} The third *Barker* factor to consider is the defendant's assertion of his right to a speedy trial. Assertion of speedy trial must be in due course and timely. *State v. Doggett*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶ 40} The state contends that Rentas did not timely assert his right to a speedy trial because he waited until "June 10, 2021" to move to dismiss the indictment. The state's reading of the docket is incorrect. Rather, it shows that Rentas first moved to dismiss the indictment in March 2021. Although Rentas requested an oral hearing, the trial court summarily denied the motion in June 2021. Following this denial, Rentas requested reconsideration of the denial and that the court conduct an evidentiary hearing.

{¶ 41} A review of the court record demonstrates that Rentas was indicted in March 1981. Nothing in the record before this court indicates that Rentas had any knowledge that the police were searching for him in 1981 or that he knew of the indictment prior to his arrest in 2020. This conclusion is supported by Demopoulos's testimony that he was unable to find any evidence to suggest that Rentas was actively evading detection or apprehension. Accordingly, Rentas could not assert a speedy trial claim until he was arrested in 2020.

{¶ 42} Moreover, under the circumstances of the case, we find that Rentas moved to dismiss the indictment in due course after discovery was obtained. Although some of the facts supporting *Barker* factors are apparent from the docket, i.e. length of the delay, Rentas could not sufficiently assert a prejudice argument without determining what evidence existed at the time of indictment and what evidence remained following arrest. Accordingly, when viewing the totality of the circumstances surrounding the case, we find that Rentas asserted his speedy trial rights in a timely fashion; this factor weighs in his favor.

### 4. Prejudice from the Delay

{¶ 43} The fourth *Barker* factor is prejudice of the delay to the defendant. In *Long*, the Ohio Supreme Court reiterated that "[t]he prejudice factor in the analysis 'should be assessed in the light of the interests of defendants[,] which the speedy trial right was designed to protect.'" *Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, at ¶ 22, quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. The three interests are: "(i) to prevent oppressive pretrial

incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The third interest — the impact of the delay on the ability of the defendant to prepare his defense — is the greatest concern because it "'skews the fairness of the entire system.'" *Id.*

{¶ 44} The trial court found that the amount of missing or destroyed evidence — hospital records, clothing, Cleveland Police Department archives, witness statements, unavailability of the alleged victim's mother due to her being deceased — prejudiced Rentas. The court further found that the remaining evidence — inconsistent statements and the investigation conducted by counsel and the investigator hired by Joselito, Rentas's brother — did not remedy the prejudice that existed in this case. The trial court's findings are supported by competent and credible evidence, and thus, we afford great deference to these findings. *See Long* at ¶ 15.

{¶ 45} The entirety of the state's argument on appeal regarding this factor is a general assertion that Rentas "has not been prejudiced by the delay" because the victim is still alive, and Rentas has failed to show "genuine prejudice." According to the state, this factor weighs against him. The state fails, however, to demonstrate how or why the trial court's findings were unsupported by the record, thereby rendering its conclusion of prejudice erroneous.

{¶ 46} Our review of the record reveals that Rentas made an affirmative showing of prejudice. As the trial court found, the amount of evidence that was originally available at the time of indictment that is now either missing or

destroyed has prejudiced Rentas. Among this evidence is the victim's hospital records and any clothing that may have been retained and the original police file containing the investigating detective's notes and impressions, and witness statements. Finally, Demopoulos testified that the original investigating detective cannot recall the case.

{¶ 47} Moreover, the victim's mother, who provided a written statement in 1996 to Joselito's legal team, has since passed away. Demopoulos admitted that the mother's statement and the victim's 1981 statement contain inconsistent information about whether a weapon was used to facilitate the rape. This information would attack the credibility and weight of the state's evidence against Rentas.

{¶ 48} No one disputes that the victim is still alive, and cases have been prosecuted on victim testimony alone. However, Rentas contends that any defense that the sexual conduct was consensual has been diminished because of the unavailability (or death) of the victim's brother-in-law, Nelson Soto. In 1996, he provided a written statement questioning the validity of the rape allegation because (1) Rentas and the victim were in a relationship; and (2) the rape allegedly occurred in a room that was less than 15 feet from the victim's parents. The state claims that Rentas has failed to prove that Soto is unavailable; however, we note that the state has not disclosed Soto as a potential witness in its discovery responses.

{¶ 49} Based on the evidence available at the time of indictment compared with the unavailability of a majority of that evidence now and its relevance to Rentas's defense, we find that Rentas has demonstrated prejudice sufficient to suggest that this *Barker* factor weighs in his favor.

{¶ 50} Accordingly, weighing the *Barker* factors after consideration of the entire record and affording deference to the trial court's findings of fact, we agree with the trial court that the state violated Rentas's constitutional right to a speedy trial. The trial court did not err in granting the motion to dismiss. The state's assignment of error is overruled.[3]

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[3] Rentas also moved to dismiss the indictment on the basis that the state violated his right to due process due to the length of time that had passed in bringing him to trial after indictment — commonly referred to as post-indictment delay. Insofar as the trial court based its dismissal on this ground, the state has not raised this basis as an assignment of error. Accordingly, it is deemed waived for appellate review.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR