[Cite as *State v. Little*, 2025-Ohio-5436.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-58 |
| Appellee | : | |
| | : | Trial Court Case Nos. 21-CR-739; 22-CR-057; 23-CR-019 |
| v. | : | |
| | : | |
| WILLIE JOE LITTLE | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 5, 2025, the judgments of the trial court are vacated, and the appellant is ordered discharged.

Costs to be paid by appellee.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

RONALD C. LEWIS, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

**OPINION**

CHRISTOPHER BAZELEY, Attorney for Appellant
ROBERT C. LOGSDON, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Willie Joe Little appeals from his convictions in the Clark County Court of Common Pleas following his no-contest pleas. For the following reasons, we vacate Little's convictions, and he is ordered discharged.

I. **Course of Proceedings**

{¶ 2} This appeal involves three indictments, which resulted in three criminal cases against Little. On November 15, 2021, in Clark C.P. No. 21-CR-739, Little was indicted by a Clark County grand jury on two counts of having weapons while under a disability, third-degree felonies in violation of R.C. 2923.13(A). The indictment included a forfeiture specification regarding two pistols. The indictment related to events that allegedly occurred on November 3, 2021. Little was arrested on November 24, 2021, pleaded not guilty to the two charged offenses, and was released on his own recognizance.

{¶ 3} On January 25, 2022, in Clark C.P. No. 22-CR-57, Little was indicted by a Clark County grand jury on the following twelve felony counts: (1) aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2); (2) aggravated possession of drugs in violation of R.C. 2925.11(A); (3) trafficking in cocaine in violation of R.C. 2925.03(A)(2); (4) possession of cocaine in violation of R.C. 2925.11(A); (5) trafficking in heroin in violation of R.C. 2925.03(A)(2); (6) possession of heroin in violation of R.C. 2925.11(A); (7) trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2); (8) possession of a fentanyl-related compound in violation of R.C. 2925.11(A); (9) trafficking in a fentanyl-related

2

compound in violation of R.C. 2925.03(A)(2); (10) possession of a fentanyl-related compound in violation of R.C. 2925.11(A); (11) trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2); and (12) possession of a fentanyl-related compound in violation of R.C. 2925.11(A).   Firearm specifications were added to counts one through seven, and a forfeiture specification was added to counts one through eight.   The indictment related to events that allegedly occurred on September 23, November 1, and November 3, 2021.   Little was arrested on January 27, 2022, and was released on his own recognizance. He pleaded not guilty to the counts in the indictment.

{¶ 4} The trial court scheduled an April 19, 2022 jury trial in Case No. 21-CR-739 and a May 3, 2022 jury trial in Case No. 22-CR-57.

{¶ 5} On March 14, 2022, Little filed a motion to suppress and a request for a hearing in Case No. 22-CR-57.   On April 14, 2022, Little filed a notice of substitution of counsel and a motion for a continuance to reset the cases for a pretrial hearing in both Case Nos. 21-CR-739 and 22-CR-57.

{¶ 6} On April 18, 2022, the trial court granted the motion for a continuance and issued notices of hearing in which it scheduled a July 7, 2022 jury trial in Case No. 21-CR-739 and a July 19, 2022 jury trial in Case No. 22-CR-57.

{¶ 7} The State filed an April 18, 2022 motion to consolidate the two cases. According to the State's motion, the indictment in Case No. 21-CR-739 stemmed from evidence seized during a residential search warrant at Little's residence.   The State explained, "During the search, there were multiple other substances found within the residence that were believed to be illicit, but at the time of the indictment, had not yet been confirmed by BCI."   After receiving the BCI reports, Little was indicted in Case No. 22-CR-57 for the possession and trafficking of those illicit substances.   Therefore, the State asked

3

the trial court to consolidate the two cases and allow them to proceed under one case number.   On June 21, 2022, the trial court granted the State's motion to consolidate.

{¶ 8} On June 29, 2022, the State filed a motion to continue the suppression hearing due to the fact the State's lead witness was scheduled to testify in another matter at the time the suppression hearing was originally scheduled.   On July 6, 2022, the trial court granted the State's motion to continue and scheduled the suppression hearing for August 29, 2022.

{¶ 9} Little subsequently filed a motion to continue the suppression hearing.   On September 7, 2022, the trial court granted the motion and scheduled the suppression hearing for October 14, 2022.   Following the suppression hearing, the trial court overruled Little's motion to suppress.

{¶ 10} On October 20, 2022, the trial court issued a notice of a December 13, 2022 jury trial.

{¶ 11} The trial in Case Nos. 21-CR-739 and 22-CR-57 commenced on December 13, 2022.   The next day, the State presented continuing testimony of the lead detective, during which he testified that he had downloaded information from Little's phone.   He further testified that there were text messages on the phone that indicated Little was involved in trafficking in drugs.   Following a recess, Little's counsel moved to dismiss the case, or in the alternative for a mistrial, on the ground that he had not been provided copies of those text messages in discovery.   The State's counsel responded by stating that all the discovery was made available to Little's counsel but could not say with certainty whether the text messages in question had actually been provided to the defense.   The trial court granted the motion for a mistrial and journalized its decision on December 29, 2022.   In the entry granting the motion for mistrial, the court stated that the case would be reassigned for trial

and the "time toward speedy trial is tolled due to the continuance of the trial being the result of the defendant's motion."

{¶ 12} On January 10, 2023, Little was indicted by a Clark County grand jury in Clark C.P. No. 23-CR-19 on the following counts: (1) trafficking in cocaine, a fifth-degree felony in violation of R.C. 2925.03(A)(1); (2) possession of cocaine, a fifth-degree felony in violation of R.C. 2925.11(A); (3) trafficking in a fentanyl-related compound, a fifth-degree felony in violation of R.C. 2925.03(A)(1); and (4) possession of a fentanyl-related compound, a fifth-degree felony in violation of R.C. 2925.11(A). The counts related to events that allegedly occurred on November 1, 2021.[1] Little was arrested on January 13, 2023, pleaded not guilty, and was released on his own recognizance.

{¶ 13} On January 18, 2023, the State filed a motion to consolidate all three cases. According to the State, on the first day of the December 2022 trial, prior to the jury being empaneled, Little filed a successful motion to dismiss two counts in the indictment in Case No. 22-CR-57 related to a second controlled buy for which the State did not yet have drug results. The State later received drug results from BCI, which it used to present the case to the grand jury, resulting in the indictment in Case No. 23-CR-19. According to the State, the indictment in Case No. 23-CR-19 was part of the previously indicted cases and stemmed from the same investigation. Therefore, the State asked the trial court to consolidate the cases and allow them to proceed under one case number. The trial court granted the motion to consolidate on February 14, 2023, and set a jury trial for April 18, 2023.

{¶ 14} On April 10, 2023, Little filed a request for discovery, a motion to dismiss the indictment, and a motion to continue the trial "to allow for a motion hearing and to track with

---

[1] The indictment listed the relevant date as November 1, 2022. The State later moved to amend the indictment to reflect the correct date of November 1, 2021. The trial court granted the State's motion to amend.

the Pre-Trial schedule of the additional two indictments of Defendant." The record does not contain any information as to what Little meant by "the additional two indictments of Defendant" and there is no order in the record granting or overruling the motion to continue.

{¶ 15} On April 24, 2023, the trial court issued a notice of hearing in which it set the matter for a scheduling conference on May 12, 2023. Following the scheduling conference, the trial court issued a June 7, 2023 entry stating that Little was informed at the scheduling conference of the new July 13, 2023 trial date.

{¶ 16} On June 23, 2023, a handwritten letter purportedly authored by Little was filed in Case No. 21-CR-739 and listed the following case numbers at the top of the letter: 21-CR-739, 22-CR-57, 23-CR-19, 23-CR-88, and 23-CR-173. The letter stated that Little's constitutional right to a speedy trial had been violated because he had been in jail since February 2, 2023. At the time the letter was filed, Little was represented by counsel.

{¶ 17} The jury trial did not go forward on July 13, 2023. There is nothing in the record explaining why the jury trial did not go forward on that date.

{¶ 18} On October 13, 2023, Little filed a motion in limine "requesting that all written, video and audio evidence produced by a now deceased confidential informant and/or containing statements by any party not subject to cross examination be excluded from entry into evidence at trial of this matter and that the State be barred from referring to same during voir dire, opening or closing statements or in the body of the case." The record does not contain a ruling by the trial court on this motion.

{¶ 19} On March 7, 2024, the trial court issued a notice of hearing in which it set a pretrial hearing for May 2, 2024, and a jury trial for May 21, 2024.

{¶ 20} On May 8, 2024, the trial court denied Little's April 10, 2023 motion to dismiss the indictment in Case No. 23-CR-19. According to the court, "[b]ecause the dismissal was

6

made prior to the jury being sworn, and was granted for a lack of lab reports being provided, the Court finds the dismissal was without prejudice and the State was able to reindict the defendant." The record contains no explanation for the lengthy delay in ruling on Little's April 10, 2023 motion to dismiss.

{¶ 21} Little failed to appear for his May 21, 2024 trial. On that day, the trial court ordered that a capias be issued for Little's arrest.

{¶ 22} On May 28, 2024, the trial court issued a notice of hearing setting a review of the case for June 13, 2024. Following the review hearing with the parties, the trial court set a trial for August 12, 2024.

{¶ 23} On August 12, 2024, the parties appeared for trial. Prior to the seating of the jury, Little raised an oral motion to dismiss the cases due to a violation of his right to a speedy trial. According to Little's trial counsel, the matter was not timely brought to trial and the amount of time that had passed after the December 2022 mistrial "exceeds the definition of reasonable." Plea Hearing Tr. 6. The trial court denied the motion. The State and Little then entered into a plea agreement. In return for the State recommending the dismissal of the remaining charges, Little agreed to plead no contest to one count of having weapons under disability in Case No. 21-CR-739, two counts of trafficking in a fentanyl-related compound in Case No. 22-CR-57, and one count of trafficking in a fentanyl-related compound in Case No. 23-CR-19.

{¶ 24} Following a plea hearing, the trial court found Little guilty of the four charges and sentenced him as follows: (1) 30 months in prison for having weapons under disability in Case No. 21-CR-739; (2) 24 months in prison for Count 7 and 12 months in prison for Count 9 in Case No. 22-CR-57; and (3) 12 months in prison for Count 3 in Case No. 23-CR-19. The trial court ordered the two sentences in Case No. 22-CR-57 to run concurrently

with each other and concurrently with the sentence in Case No. 23-CR-19. The court ordered the sentence in Case No. 21-CR-739 to be served consecutively to the sentences ordered in Case Nos. 22-CR-57 and 23-CR-19, resulting in an aggregate prison sentence of 54 months. Little was given one day of jail-time credit in Case No. 21-CR-739 and 0 days in the other two cases. Little filed a timely notice of appeal from the trial court's judgments.

II. **The Trial Court Reasonably Informed Little that He Was Waiving His Right to a Jury Trial**

{¶ 25} Little's first assignment of error states:

LITTLE'S NO CONTEST PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY GIVEN.

{¶ 26} Little argues that the trial court failed to strictly comply with Crim.R. 11(C)(2)(c) when it did not inform him of his constitutional right to a jury trial. Appellant's Brief, p. 3. Although he concedes that his plea was entered the day a jury trial was set to begin, Little contends the trial court's advisement that he had a right to "a trial" did not satisfy the requirements of Crim.R. 11(C)(2)(c).

{¶ 27} The State responds that "the record from the day of the plea is replete with mentions of a jury trial." Appellee's Brief, p. 5. According to the State, "the plea form stated plainly that waiving a jury trial was inherent in the plea. Further, the fact that this was the morning of trial and the jury was waiting to be brought in supports that . . . [Little] was aware that he had the right to a jury trial and was waiving that right by entering a plea." *Id.*

{¶ 28} "Crim.R. 11(C)(2)(c) requires that the defendant be advised of the right to a jury trial, the right to confront one's accusers, the privilege against compulsory self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt." *State v. Veney*, 2008-Ohio-5200, ¶ 19.

8

"A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of these constitutional rights." *State v. Howard*, 2016-Ohio-426, ¶ 7 (2d Dist.), citing *State v. Barker*, 2011-Ohio-4130, ¶ 15, citing *Veney* at ¶ 18. "A guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner that his plea waives those rights." *State v. Eggers*, 2013-Ohio-3174, ¶ 11 (2d Dist.), citing *State v. Ballard*, 66 Ohio St.2d 473 (1981).

{¶ 29} "Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." *Ballard* at paragraph two of the syllabus. Therefore, the Ohio Supreme Court has "recognized that a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Veney* at ¶ 27, citing *Ballard* at paragraph two of the syllabus. Moreover, "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Barker* at ¶ 25.

{¶ 30} In *Ballard*, the Ohio Supreme Court upheld a defendant's guilty plea even though the court failed to specifically mention the right to a jury trial by name but rather informed the defendant that "neither judge nor jury could draw any inference if the [defendant] refused to testify" and then stated that defendant "was entitled to a fair and impartial trial under law." *Ballard* at 481. The Supreme Court concluded that, taken

9

together, these advisements were sufficient to inform the appellant of his right to a jury trial. *Id.*

{¶ 31} Similarly, in *State v. Courtney*, 2014-Ohio-1659 (2d Dist.), we held that a trial court sufficiently explained the defendant's right to a jury trial during its plea colloquy when it stated that the defendant had "the right to a trial" and explained, "'At that trial you would have the right to require the State to prove beyond a reasonable doubt each and every element of the offense to which you are pleading guilty, and you could only be convicted *upon the unanimous verdict of a jury*.'" (Emphasis in original.) *Id.* at ¶ 9. In so holding, we explained that "an average person of [defendant]'s age and intelligence would know that a trial requiring a 'unanimous verdict of a jury' to convict necessitates a jury trial . . . ." *Id.*

{¶ 32} At the beginning of Little's plea hearing, the trial court explained that "[w]e are here for a criminal jury trial today. . . . It's my understanding at this time that there may be a potential resolution to this matter." Plea Hearing Tr. 9. Moreover, the following exchange occurred during the plea colloquy:

THE COURT: Next, I want to go over your constitutional rights, sir. Mr. Little, you have a right to have a trial in these matters. Do you understand that?

DEFENDANT: Yes.

THE COURT: At that trial you have a right to confront and cross-examine all of the witnesses that are called to testify against you. Do you understand that?

DEFENDANT: Yes.

THE COURT: You have a right to use the Court's subpoena power to subpoena your own witnesses to testify in your behalf. Do you understand that?

10

DEFENDANT:   Yes.

. . .

THE COURT:   Mr. Little, at this time I'm going to ask you - - actually, at this time you're not admitting to the facts, so I am going to move on to the plea form.   Mr. Little, did you have an opportunity to review the plea form with your attorney?

DEFENDANT:   Yes.

THE COURT:   Do you believe you understood everything in this plea form?

DEFENDANT:   Yes.

*Id.* at 24-27.

{¶ 33} At the time of the plea hearing, Little was 51 years old.   He had completed the tenth grade in high school.   A jury trial had been set to commence immediately before the plea hearing began.   At the beginning of the plea hearing, the trial court explained the fact that the parties were there for a jury trial but there may be a resolution of the matter.   The court then proceeded with a plea colloquy in which it informed Little that he had a constitutional right to a trial that he was giving up by pleading no contest.   Little stated that he understood this.   The court also asked whether Little had read the plea form, understood it, and signed it.   Little responded yes to those questions.   The plea form stated that Little was giving up his right to a jury trial.

{¶ 34} Based on the record before us, we conclude that Little was informed in a reasonable manner that pleading no contest would waive his right to a jury trial.   *See State v. Smiddy,* 2015-Ohio-4200, ¶ 6, 15 (2d Dist.) (holding that the reference to a "unanimous verdict of a jury" during the plea colloquy prevented any ambiguity relating to defendant giving up his right to a jury trial and that even if there was any ambiguity, it would have been

11

resolved by the written plea agreement that defendant signed). Therefore, his pleas were knowing, intelligent, and voluntary. The first assignment of error is overruled.

### III. Little's Constitutional Right to a Speedy Trial Was Violated

{¶ 35} Little's second and third assignments of error are interrelated and state:

THE TRIAL COURT ERRED WHEN IT HELD THAT GRANTING LITTLE'S MOTION FOR A MISTRIAL WAS A TOLLING EVENT FOR SPEEDY TRIAL PURPOSES.

LITTLE'S CONVICTIONS AND SENTENCES MUST BE VACATED BECAUSE THE TRIAL COURT VIOLATED HIS STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL.

{¶ 36} Little contends that the length of delay in each of his three cases was "exceptionally high given the relative simplicity of the cases." Appellant's Brief, p. 10. According to Little, he "was clearly prejudiced by the delay. He was subject to the anxiety and concern that naturally arise from being aware of pending criminal charges against him for over three years in case number 0739, almost three years in case number 0057, and almost two years in case number 0019." *Id.* at 14. Accordingly, "Little asks this court to vacate his convictions and sentences and discharge him from these cases." *Id.*

{¶ 37} The State responds that the 270 days provided in R.C. 2945.71(C)(2) did not expire in any of the three cases. The State further argues that a reasonable amount of time passed between the December 2022 mistrial and August 12, 2024, the day on which Little pleaded no contest. Therefore, the State contends that Little's constitutional and statutory rights to a speedy trial were not violated in any of his three criminal cases.

{¶ 38} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent,

12

credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 2020-Ohio-5363, ¶ 15, citing *State v. Barnes*, 2008-Ohio-5472, ¶ 17 (8th Dist.). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.'" *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.), quoting *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.).

{¶ 39} "The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. Section 10, Article I of the Ohio Constitution guarantees an accused this same right." *State v. Hughes*, 86 Ohio St.3d 424, 425 (1999), citing *State v. MacDonald*, 48 Ohio St.2d 66, 68 (1976). "This constitutional mandate was codified in Ohio by the enactment of R.C. 2945.71, which designates specific time limits for bringing a defendant to trial." *State v. Louis*, 2020-Ohio-951, ¶ 28 (2d Dist.). "Thus, for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987).

{¶ 40} "[A]lthough the statutory and constitutional speedy trial provisions are coextensive, the constitutional guarantees may be found to be broader than speedy trial statutes in some circumstances." *Id.* The Supreme Court of Ohio has recognized that "'there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority . . . .'" *Id.*, quoting *State v. Ladd*, 56 Ohio St.2d 197, 201 (1978). "'[B]ecause constitutional speedy trial guarantees may be found to be broader than speedy trial statutes,' a constitutional right to a speedy trial must

13

be analyzed separately from a statutory speedy trial right." *State v. Frazier*, 2023-Ohio-4222, ¶ 6 (9th Dist.), quoting *State v. Williams*, 1994 WL 135309, *2 (9th Dist. Apr. 20, 1994).

### a. Little's Statutory Right to a Speedy Trial

{¶ 41} Pursuant to R.C. 2945.71(C)(2), a felony defendant must be brought to trial within 270 days after the defendant's arrest. "For purposes of calculating speedy-trial time, 'each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days.' R.C. 2945.71(E). Thus, subject to certain tolling events, a jailed defendant must be tried within 90 days." *State v. Ramey*, 2012-Ohio-2904, ¶ 15. The day of arrest is not counted when calculating a defendant's speedy trial time. *State v. Cimpaye*, 2020-Ohio-2740, ¶ 17 (2d Dist.), citing *State v. Cline*, 2003-Ohio-4712, ¶ 27 (2d Dist.), *rev'd on other grounds*, 2004-Ohio-5701.

{¶ 42} "[T]he prescribed times for trial set forth in R.C. 2945.71 are not absolute in all circumstances, but a certain measure of flexibility was intended by the General Assembly by the enactment of R.C. 2945.72, wherein discretionary authority is granted to extend the trial date beyond the R.C. 2945.71 time prescriptions." *State v. Wentworth*, 54 Ohio St.2d 171, 173 (1978), citing *State v. Lee*, 48 Ohio St.2d 208 (1976), and *State v. Davis*, 46 Ohio St.2d 444 (1976). "Accordingly, R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *Ramey* at ¶ 24. These include the following relevant circumstances: (1) any period of delay occasioned by the neglect or improper act of the accused; (2) the period of any continuance granted on the accused's own motion; and (3) the period of any reasonable continuance granted other than upon the accused's own motion. R.C. 2945.72(D), (H).

{¶ 43} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable

time limits." *State v. Sanchez*, 2006-Ohio-4478, ¶ 8. "A defendant establishes a prima facie speedy trial violation when his motion reveals that a trial did not occur within the time period prescribed by R.C. 2945.71." *State v. Hill*, 2020-Ohio-2958, ¶ 6 (2d Dist.), citing *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). "If a defendant 'establishes a prima facie case of a violation of his right to a speedy trial, the burden then shifts to the State' to demonstrate either that the statutory limit was not exceeded, or that the State's time to bring the defendant to trial was properly extended." *State v. Wagner*, 2021-Ohio-1671, ¶ 12 (2d Dist.), quoting *State v. Nichols*, 2005-Ohio-1771, ¶ 11 (5th Dist.), citing *Butcher* at 30-31.

### i. Case Nos. 21-CR-739 and 22-CR-57

**{¶ 44}** According to Little, his statutory speedy trial time in Case Nos. 21-CR-739 and 22-CR-57 was not extended by the December 2022 mistrial because a mistrial is not a tolling event. We agree that a mistrial is not a tolling event pursuant to R.C. 2945.71 because following a mistrial, R.C. 2945.71 does not apply, and the standard to be applied for speedy trial purposes is "reasonableness under federal and state constitutions." *State v. Fanning*, 1 Ohio St.3d 19, 21 (1982). Therefore, to determine whether Little's statutory right to a speedy trial was violated in Case Nos. 21-CR-739 and 22-CR-57, we must simply analyze whether the 270 days expired before the December 2022 trial commenced. If they did expire, then his statutory right to a speedy trial was violated. If they did not expire, then his statutory right to a speedy trial was not violated and we will conduct a separate analysis below relating to whether the delays occurring after the mistrial were reasonable under federal and state constitutions. *Fanning* at 21.

**{¶ 45}** In Case No. 21-CR-739, Little was arrested on November 24, 2021, and he was not brought to trial until December 13, 2022. The period between these two dates is

15

384 days. Little was released on his own recognizance during this period and was not in custody. The record establishes that the speedy-trial time was tolled for 213 days from March 14, 2022, to October 14, 2022, due to (1) Little's filing of a motion for continuance, a motion to suppress, and a motion to continue the suppression hearing; and (2) the State's filing of a motion to continue the suppression hearing for a reasonable time due to the absence of a key witness. After subtracting these 213 days of tolled time from the 384 days that expired, we conclude that the December 13, 2022 trial began well within the 270 days provided by statute. Moreover, given that Little was arrested in Case No. 22-CR-57 well after he was arrested in Case No. 21-CR-739, and the same tolling period occurred in both cases, Little's statutory right to a speedy trial was also not violated in Case No. 22-CR-57.

{¶ 46} Based on our review of the record, we conclude that the trial court did not err in finding that Little's statutory right to a speedy trial was not violated in Case Nos. 21-CR-739 and 22-CR-57.

### ii. Case No. 23-CR-19

{¶ 47} Our analysis of the statutory speedy trial issue in Case No. 23-CR-19 is slightly more complex than our analysis in Case Nos. 21-CR-739 and 22-CR-57. There was no mistrial that occurred during the pendency of Case No. 23-CR-19. Indeed, Little was arrested in Case No. 23-CR-19 approximately one month after the December 2022 mistrial. However, the State argued—and the trial court found—that the counts alleged in the January 2023 indictment were essentially a reindictment of counts that were dismissed without prejudice from the indictment in Case No. 22-CR-57. Indeed, the State later explained to the trial court that the four counts in the indictment in Case No. 23-CR-19 were "a re-indictment of Counts Eleven and Twelve from 22-CR-0057 that were dismissed during Defendant's first trial as we did not have drug results." Plea Hearing Tr. 4. Therefore, the

16

speedy trial time that had accrued in Case No. 22-CR-57 at the time of the mistrial must be tacked on to the time that accrued in Case No. 23-CR-19 after Little was indicted in that case. *State v. Broughton*, 62 Ohio St.3d 253, 261 (1991) ("[A]ny time period that has elapsed under the original indictment should be tacked on to the time period commencing with the second indictment.").

{¶ 48} Based on our review of the record, the following days accrued toward Little's statutory speedy trial time in Case No. 22-CR-57: (1) 45 days from January 28, 2022, to March 13, 2022; and (2) 59 days from October 15, 2022, to December 12, 2022. Adding those two periods together results in a total of 104 days that had expired, leaving 166 days to bring Little to trial in Case No. 23-CR-19. Another 5 days expired from January 13, 2023, to January 17, 2023, and another 54 days from February 15, 2023, to April 9, 2023. Therefore, as of April 10, 2023, when Little filed a motion to dismiss the indictment in Case No. 23-CR-19, 163 speedy trial days had expired, leaving 107 days to bring Little to trial.

{¶ 49} As we noted above, Little filed an April 10, 2023 motion to dismiss the indictment and later filed an October 13, 2023 motion in limine. The trial court never ruled on the motion in limine and did not rule on the motion to dismiss the indictment until May 8, 2024. The State contends that "120 days has been seen by many districts as a reasonable time to rule upon a motion . . . ." Appellee's Brief, p. 8, citing *State v. Howard*, 2010-Ohio-501, ¶ 16 (2d Dist.), citing *State v. Staffin*, 2008-Ohio-338 (4th Dist.), and *State v. Fields*, 2006-Ohio-223 (5th Dist.). From April 10, 2023, to May 8, 2024, 395 days expired. The motions pending before the trial court were not complicated and there is no evidence in the record that the trial court was waiting on the parties to file additional motions, evidence, or arguments during this delay. And the record is devoid of an explanation for the lengthy time it took for the trial court to issue a decision on the April 10, 2023 motion to dismiss. The

trial court ultimately issued a one-page decision denying the motion to dismiss. Even if we were generous and allowed two separate 120-day tolling periods for the trial court to rule upon the motion to dismiss and the motion in limine, that would still result in 155 speedy trial days expiring during this 395-day delay. As a reminder, as of April 10, 2023, only 107 days remained of the original 270 days. The record contains no other potential tolling events during the period from April 10, 2023, to May 8, 2024. Therefore, the 270 days in which the State was required to bring Little to trial had expired well before the scheduled May 21, 2024 trial.

{¶ 50} The record establishes that Little failed to appear for the scheduled May 21, 2024 trial. As a result, the trial court issued a capias for Little's arrest and rescheduled the May 2024 trial. The question arises whether Little's failure to appear for his scheduled trial excused the State's failure to bring him to trial within the 270 days provided in R.C. 2945.71.

{¶ 51} In *State v. Bauer*, 61 Ohio St.2d 83 (1980), the Court addressed what effect a defendant's failure to appear for trial had on his statutory right to a speedy trial. There, the defendant failed to appear for a May 1977 trial. He was subsequently apprehended a month later and was placed in custody. The trial was rescheduled for September 1977. Four days before the rescheduled trial, defendant's counsel filed a motion to discharge defendant under the provisions of R.C. 2945.73. The trial court denied the motion. Defendant argued on appeal that the time running under the statute should have been tolled only between his initial trial date and his recapture. Therefore, defendant believed his statutory right to a speedy trial had been violated.

{¶ 52} The Court did not agree with defendant's proposed approach. The Court explained, "We find this solution unworkable and inconsistent with the efficient administration of justice. There is no justification for a rule which could require a court to

18

reschedule, within a few days after his rearrest, the trial of a defendant who has forfeited his appearance bond." *Bauer* at 85. The Court noted that a defendant "will not be permitted to enjoy the protection of these statutes, as to a time period prior to his failure to appear, when by his actions he has waived their benefits." *Id.* at 84. The Supreme Court concluded, "a defendant who fails to appear at a scheduled trial, and whose trial must therefore be rescheduled for a later date, waives his right to assert the provisions of R.C. 2945.71 through 2945.73 for that period of time which elapses *from his initial arrest to the date he is subsequently rearrested*." (Emphasis added.) *Id.* In other words, the statutory speedy trial clock is reset to one on the day a defendant is rearrested after failing to appear for a trial date.

{¶ 53} At first blush, the *Bauer* decision seems to cure the State's failure to bring him to trial within the requisite 270-day period in Case No. 23-CR-19. If his statutory speedy-trial clock began anew when he was rearrested, it is undisputed that his statutory right to a speedy trial was not violated when he showed up for trial in August 2024, less than 90 days after his rearrest. However, we do not believe the holding in *Bauer* applies to Little's situation.

{¶ 54} In *Bauer*, the Court stressed, "It is clear that [defendant] was afforded his statutory right to a speedy trial initially, but through his own design he chose to shun this right and impede the prompt administration of this cause." *Bauer* at 84. Unlike the defendant in *Bauer*, Little's statutory speedy trial time had already expired as of the May 21, 2024 trial. Therefore, he was not "afforded his statutory right to a speedy trial initially." Unlike the situation in *Bauer*, there is no need in the instant appeal to preclude a defendant from attempting to game the system by not showing up for trial and then using the subsequent delay resulting from his own actions to claim that he was not brought to trial

within the requisite 270 days. The First District succinctly stated this limitation on the holding in *Bauer*:

> It is thus clear that the waiver rule announced in *Bauer* must be limited to those cases in which a trial date has initially been set within the statutory limits, and the defendant thereafter causes a delay frustrating the commencement of trial on that date. Viewed in this light, the rule has significance in the instant cause only if the trial date set for the appellant at the time he violated his bond fell within two hundred seventy statutory days of his arrest.

*State v. Barrow*, 1981 WL 9821, *2 (1st Dist. June 3, 1981).

{¶ 55} Little was not brought to trial in Case No. 23-CR-19 within the requisite 270 days. Therefore, Little's statutory right to a speedy trial was violated, and the trial court erred in overruling Little's motion to dismiss in Case No. 23-CR-19.

### b. Little's Constitutional Right to a Speedy Trial

{¶ 56} We must now determine whether Little's constitutional right to a speedy trial was violated. Given the closeness in time between the December 2022 mistrial (Case Nos. 21-CR-739 and 22-CR-57) and the January 10, 2023 indictment (Case Number 23-CR-19), and the fact that the three cases were consolidated on February 14, 2023, we analyze all three cases together.

{¶ 57} "To determine whether a defendant's constitutional right to a speedy trial has been violated, a court should apply the four-factor balancing test adopted by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972)." *State v. Wagner*, 2021-Ohio-1671, ¶ 14 (2d Dist.). "The factors include: (1) the length of the delay 'between accusation and trial'; (2) the reason for the delay; (3) the

20

defendant's assertion, if any, of his right to a speedy trial; and (4) the prejudice, if any, to the defendant." *Id.*, citing *Doggett v. United States*, 505 U.S. 647, 651 (1992), and *State v. Adams*, 2015-Ohio-3954, ¶ 88.

{¶ 58} "None of the factors is controlling because a 'balancing test necessarily compels' a court to evaluate an alleged speedy trial violation 'on an ad hoc basis,' meaning that the court must consider the totality of the circumstances." *Id.* at ¶ 15, quoting *Barker* at 530. However, "the length of the delay is a particularly important factor as it 'is to some extent a triggering mechanism.'" *State v. Lee*, 2024-Ohio-1802, ¶ 9 (2d Dist.), quoting *Barker* at 530. This is because "'[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.*, quoting *Barker* at 530. "The length of delay becomes presumptively prejudicial as it approaches one year in length." *Id.*, citing *Doggett* at 652, fn. 1.

{¶ 59} When reviewing the second *Barker* factor, the reason for the delay in bringing the defendant to trial, "[o]nly the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *State v. Triplett*, 78 Ohio St.3d 566, 569 (1997), citing *Doggett* at 658. "Deliberate dilatory acts are weighted heavily against the state, while negligent acts are weighted less heavily against the state." *State v. Duncan*, 2021-Ohio-3229, ¶ 16 (1st Dist.), citing *Barker* at 531. "[I]ntertwined within this *Barker* analysis is whether the defendant shares any responsibility for the delay." *State v. Rentas*, 2022-Ohio-2412, ¶ 32 (8th Dist.), citing *Triplett* at 570.

{¶ 60} With regard to the third *Barker* factor—whether the defendant asserted his right to a speedy trial—we note that "'[i]t is well established under our law that the right to a speedy trial conferred by the Constitution is not self-executing.'" *State v. Perkins*, 2009-Ohio-3033, ¶ 12 (2d Dist.), quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963).

21

"'Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the protection of the Constitution. . . . In other words, there can be no denial where there has been no demand.'" *Id.*, quoting *Partsch* at 140.

{¶ 61} Finally, the fourth *Barker* factor—whether the defendant was prejudiced by the delay—"should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The third interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

{¶ 62} Based on our review of the record, the first *Barker* factor weighs in favor of a finding that Little's constitutional right to a speedy trial was violated in all three of his criminal cases at issue in this appeal. There was a delay of over 20 months between the December 2022 mistrial and his August 2024 no contest pleas, which raises a presumption of prejudice. Further, a closer look at this 20-month period reveals that there was an over one-year delay while motions were pending before the trial court.

{¶ 63} On April 10, 2023, Little filed a motion to dismiss the indictment, motion for discovery, and motion to continue the April 18, 2023 scheduled trial. On April 24, 2023, the trial court issued a notice for a May 12, 2023 hearing and scheduling conference. According to a June 7, 2023 entry issued by the trial court, the May 12, 2023 conference was held, and a jury trial was scheduled for July 13, 2023.

{¶ 64} On June 23, 2023, a handwritten letter purportedly authored by Little was filed in Case No. 21-CR-739. Little was represented by counsel at this time. In the letter, Little stated that he believed his right to a speedy trial was being violated and that he had been in

jail for several months. The State did not file a motion to strike the letter from the record, and the trial court never addressed the June 23, 2023 letter.

{¶ 65} No jury trial occurred on July 13, 2023. There is nothing in the record explaining why the jury trial did not proceed at that time.

{¶ 66} Little's counsel filed a motion in limine on October 13, 2023. The trial court did not issue any ruling on the motion in limine.

{¶ 67} The three cases essentially laid dormant until the trial court issued a March 7, 2024 notice in which it identified May 21, 2024 as the date for the jury trial. On May 8, 2024, the trial court finally issued an order denying Little's April 10, 2023 motion to dismiss the indictment. The trial court did not provide any explanation for the over one-year delay in ruling on Little's motion to dismiss.

{¶ 68} In summary, over one year passed from the time Little filed his motion to dismiss the indictment and the date on which the trial court finally overruled the motion. The record contains no explanation for this delay. There also is no explanation in the record as to why the July 13, 2023 trial did not go forward as scheduled. Further, seven months passed between the date on which Little filed a motion in limine and the May 21, 2024 trial date and the trial court ultimately made no ruling on the motion in limine. Under these facts, we conclude the first *Barker* factor weighs in favor of Little.

{¶ 69} Regarding the second *Barker* factor, there is no explanation in the record for why there was an over one-year delay between the filing of Little's April 2023 motions and the May 2024 order overruling one of the motions. On August 12, 2024, shortly before trial was set to begin, the trial court explained why it had decided to overrule Little's motion to dismiss on speedy-trial grounds:

23

The Court, in reviewing that matter, again an oral motion here today, the Court, while acknowledging that it has taken some time to get this matter to a trial date, the Court would place on record that a number of those dates had to be continued for motions to continue, other motions that were filed in this matter.

I would also note that this matter was set back, I believe in May of this year at which time Mr. Little failed to appear and capiases had to be issued for Mr. Little's arrest. Then getting it back on the Court's docket with scheduling with the attorneys, this was the next reasonable and quickest time to get it back on the Court's docket. Again, the Court set it on a Monday so that we would have no other conflicts with Mr. Little being out of custody on these three matters. So, therefore, the Court is going to overrule the motion to dismiss on a speedy trial grounds.

Plea Hearing Tr. 7.

{¶ 70} "'On appeal, the prosecution has the burden of explaining the cause for pre-trial delay.'" *State v. Jackson*, 2016-Ohio-5196, ¶ 11 (1st Dist.), quoting *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987). In its appellate brief, the State attempts to explain some of the one-year delay that occurred between April 2023 and May 2024. According to the State, Little's April 10, 2023 motion to continue "requested that the cases before the court in this appeal be delayed to stay on the same pretrial schedule as the two cases that were later dismissed after a suppression." Appellee's Brief, p. 7. The State contends the one-year delay in the three cases before us on appeal was caused by motions that Little filed in Clark C.P. No. 23-CR-173. The record before us does not contain any information relating to Case No. 23-CR-173. The State attached to its appellate brief a copy of the

24

online docket for Case No. 23-CR-173 and asks us "to take judicial notice of this docket to demonstrate the reason for delay" in the three cases at issue in this appeal. Appellee's Brief, p. 7-8. We are disinclined to take judicial notice of an online docket from another case when there is nothing in our record that establishes what connection the other case has to the three cases at issue in this appeal, especially when the State and the trial court had ample opportunity to include such information in the record while Little's three cases were pending at the trial court level.

{¶ 71} Even if we took judicial notice of the online docket for Case No. 23-CR-173, however, it would not change our analysis in this matter. There is nothing in the record before us that establishes that the trial court delayed matters in Case Numbers 21-CR-739, 22-CR-57, and 23-CR-19 due to events that were taking place in Case No. 23-CR-173. For example, there is no order in the record before us staying the three case numbers at issue in this appeal until the resolution of Case No. 23-CR-173 or stating that all four of the cases would proceed on a parallel track. And the trial court did not issue an order ruling on or addressing Little's April 10, 2023 motion for a continuance. Rather, it scheduled a July 13, 2023 jury trial after having a May 12, 2023 scheduling conference with the parties. The record does not contain a transcript from the scheduling conference. Further, there is no order in the record before us consolidating Case No. 23-CR-173 with any of the three cases at issue in this appeal.

{¶ 72} If the State believed the over one-year delay in the three cases at issue in this appeal was caused by events that occurred in Case No. 23-CR-173 that were attributable to Little, it should have made this argument at the trial court level and made a record to support this argument. Similarly, if the trial court was relying on events in Case No. 23-CR-173 to overrule Little's motion to dismiss on speedy-trial grounds, the trial court should have

stated as much. Instead, the trial court focused on the fact that Little failed to appear for the May 21, 2024 trial. Based on the record before us, we conclude the second *Barker* factor supports a finding that Little's constitutional right to a speedy trial was violated.

{¶ 73} The third *Barker* factor also weighs in favor of Little. On August 12, 2024, the parties appeared in court for the jury trial. Immediately before the trial court began seating prospective jurors, Little asked the trial court to dismiss the cases on speedy trial grounds because the time that had expired since the December 2022 mistrial "exceeds the definition of reasonable." Plea Hearing Tr. 6. Therefore, Little asserted his right to a speedy trial. Little also sent a June 2023 handwritten letter to the trial court in which he raised his right to a speedy trial. Notably, he was represented by trial counsel at that time, and the State could have filed a motion to strike the letter as inappropriate given the fact that any filings on behalf of Little should have been made by his counsel rather than in a pro se fashion. The State did not file a motion to strike the letter. Regardless, the record is clear that Little asserted his right to a speedy trial.

{¶ 74} The fourth *Barker* factor requires us to look at whether Little was prejudiced by the lengthy delay. Neither the trial court nor the parties made much of an effort to develop the record on this final *Barker* factor. But Little argues on appeal that he "was subject to the anxiety and concern that naturally arise from being aware of pending criminal charges against him for over three years" and "[t]hat anxiety is only amplified by the stress of having to go through two days of trial only to have a mistrial declared in December, 2022." Appellant's Brief, p. 14. Little also notes that "[t]here can be no doubt that the passage of time, over three years in case number 0739, would affect the memories of the witnesses who would have been called to trial on August 14, 2024." *Id.* The State did not address in its appellate brief whether Little was prejudiced by the lengthy delay.

26

**{¶ 75}** Based on our review of the record and our weighing of the four *Barker* factors, we conclude that Little's constitutional right to a speedy trial was violated in Case Nos. 21-CR-739, 22-CR-57, and 23-CR-19. The second and third assignments of error are sustained.

**{¶ 76}** Finally, we would be remiss if we did not remind parties and trial courts to do their best to build a complete record while the case is at the trial court level. With very few exceptions, we are limited to reviewing what is in the record before us. We are then tasked with reaching the correct legal result based on the record and the applicable law. If parties and trial courts do not build an accurate and complete record, the chances increase that we could reach an incorrect legal result. This is especially true in appeals involving defendants' statutory and constitutional rights to a speedy trial, which often require us to parse through the record looking for explanations for various delays. While we acknowledge that parties and trial courts are busy juggling many complex matters, the failure to bring defendants to trial in a speedy fashion is a serious matter that cannot be ignored. If there are legitimate reasons for not bringing defendants to trial in a timely fashion, these reasons need to be clearly documented in the record. Parties of a case should not rely on an appellate court to take judicial notice of facts that they had ample opportunity to place into the record while the cause was pending before the trial court.

## IV. Conclusion

**{¶ 77}** Having sustained Little's second and third assignments of error, we vacate Little's convictions in Case Numbers 21-CR-739, 22-CR-57, and 23-CR-19, and he is ordered discharged from these cases.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.

27